Joel E. PEARMAN, Plaintiff/Appellant,

v.

Ann F. PEARMAN, Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section, at Knoxville.

June 16, 1989.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 6, 1989.

Richard K. Evans, Oak Ridge, for plaintiff-appellant.

Vivian L. Crandall, Oak Ridge, for defendant-appellee.

TOMLIN, Presiding Judge (Western Section).

Father appeals from a post-divorce order by the Chancery Court for Roane County granting Mother's petition to remove the parties' minor children from the county. At the same time the chancellor dismissed Father's petition for change of custody. On appeal, Father presents three issues for our consideration: (1) Did Mother carry the burden of proof in showing that the relocation would be in the best interests of the children? (2) Did the chancellor err in excluding the testimony of a psychologist as to the children's statements regarding their custodial preference? (3) Did the trial court err in denying Father's petition for change of custody? The first issue is dispositive of this appeal. In addition, we do not reach the second and third issues because of deficiencies in appellant's brief in presenting these issues to us. We find that Mother carried the burden of proof and affirm.

Mother and Father obtained an irreconcilable-differences divorce in 1987. At that time they entered into a property settlement agreement which also decided custody of their two minor sons. This agreement was incorporated into the final decree and read in pertinent part as follows:

Wife shall have custody of the parties' minor children with the provision that she shall not change the residence of the children from a fifty-mile radius of Roane County without prior Court approval.

Following the divorce, Mother met Mike McCain, a divorced father who has custody of his two minor children. They fell in love and contemplated marriage. Mr. McCain, an intelligence agent by profession, then employed in Huntsville, Alabama, sought

and obtained employment in Tullahoma, Tennessee. Husband filed a petition for change of custody alleging the following:

It has come to the petitioner's attention that the respondent intends to marry and attempt to move the residence of the children beyond a fifty mile radius of Roane County. Petitioner avers that this is a change in circumstances which would warrant a change in custody.

Wife then filed an answer admitting her desire and intention to marry Mr. McCain and to move the children to Tullahoma, a city outside a fifty-mile radius of Roane County. She also filed a counter-petition asking the court to approve the move, in accordance with the terms of the divorce decree. The proceedings were transferred to chancery court from general sessions court for disposition.

In *Seessel v. Seessel,* 748 S.W.2d 422, 424 (Tenn.1988), the Supreme Court stated that a custodial parent seeking court approval to remove children of a divorce from the jurisdiction had the burden of proof of showing to the court that the relocation or removal would be in the best interests of the child or children. However, the *Seessel* court gave little guidance as to just how a custodial parent seeking removal might meet that burden. *Seessel* was decided March 14, 1988 followed by a denial of a petition to rehear on April 25, 1988. The case under consideration was tried June 25, 1988, and it is apparent that the chancellor was aware of our Supreme Court's decision in *Seessel.*

After a full hearing the chancellor rendered an oral opinion from the bench, which was subsequently incorporated verbatim as part of the final decree. After dismissing Father's petition to change custody, the chancellor allowed Mother to remove herself and the parties' two minor children from Roane County to "no more distant than the city of Tullahoma is from Roane County, Tennessee." The chancellor reasoned:

In doing so the Court is basing its decision on two facts, primarily. One is that these children will be living in a home where there is a male and female figure present in the home. Two, where the children will be supervised by a non-working mother, or that's the indication here to the Court; there would be a non-working mother. Based on those two facts, the court is going to authorize her to remove the children, as I say, from Roane County, Tennessee, but no more distant than the city of Tullahoma, Tennessee.

In addition, the chancellor made several modifications in the visitation privileges in light of the children's new residence.

## I. REMOVAL OF THE CHILDREN

■ This case is somewhat different factually from *Seessel* and its progeny in that it does not involve the removal of children from the state, but rather their removal beyond a specified distance from the county in which the divorce was obtained. While it appears that the fifty-mile radius surrounding Roane County would include portions of Kentucky, Georgia, and North Carolina, as well as Tennessee, the same concerns and competing interests are involved. In other words, Mother still must show that the relocation of these children with her as the custodial parent beyond the fifty-mile radius of Roane County is in their best interests.

In *Rogero v. Pitt,* 759 S.W.2d 109, 112 (Tenn.1988), decided subsequent to both *Seessel* and the case at bar, our Supreme Court stated:

There are few legal formulae or invariable principles to guide the courts in decisions of this nature. Such decisions are primarily factual, not legal. Attempts to reduce to legal doctrine the resolution of cases such as this usually have little significance.

*Id.* at 112.

The *Rogero* Court discussed several factors which contributed to the petitioner therein carrying the burden of proof. It noted that the trial judge found the proposed stepfather to be a fit person to have Mother's children in his home; that he had children of his own in the home, which was described as spacious and ample for all the parties involved. In addition, the *Rogero*

court noted that consideration was given to the quality of educational facilities in Ohio and that job opportunities for Mother in Ohio were more favorable than in Knoxville. The court also noted that Wife's desire to remarry was a legitimate reason for removal, and that the children spent most of their time with their Mother, who had the responsibility for most of the decisions regarding their regular activities and education.

In the case before us it was stipulated that Mother's husband-to-be was a man of good moral character, who was cleared by government intelligence to handle top-secret matters, and that the physical surroundings where the parties would live would be adequate. Mr. McCain testified that he wanted the children in his home. There was further proof to the effect that he was active in his church in Tullahoma, and that he would continue to be active following his marriage to Mother. Mr. McCain testified that he selected Tullahoma for his home based upon the financial opportunities for him there, along with recognition of Mother's divorce decree concerning the fifty-mile-radius limitation. He stated that he gladly would have moved to Oak Ridge (which is within the fifty-mile radius) but he could not find a comparable job there.

As noted by the chancellor, Mr. McCain's employment in Tullahoma would permit Mother to cease working at her job as a special education teacher, thereby permitting her to devote full time to the raising of her two children as well as her new husband's children. Mother testified that she had visited Tullahoma and was aware of the quality of Mr. McCain's home life with his children. There was also testimony that there was a church of the children's denomination near Mr. McCain's home, and that the school system in Tullahoma which the children would attend was shown to have an exceptionally high academic ranking.

There is no evidence in this record to suggest that Mother's desire to relocate to Tullahoma, approximately twenty-five miles beyond the present geographic restriction, is in any way vindictive or that she is deliberately attempting to interfere with Father's normal and close relationship with his children. The chancellor granted Father extended visitation as a condition of approving Mother's move, and in addition relieved Father of one-month's child support annually. Father has not shown this Court that the new visitation arrangements would prevent his having a realistic opportunity to visit with his children. We are convinced that the evidence presented herein does not preponderate against the decree of the chancellor.

## II. EXCLUSION OF TESTIMONY

■ In the Argument section of his brief Father states: "The court erred in sustaining the objection to Dr. Robert K. Albiston's testimony concerning the wishes of the children." Nowhere in his brief does he give citations to the record where this evidence was objected to and excluded at trial. In addition, he has not shown in his brief how or where in the record this alleged error resulted in prejudice to him. Father has thus failed to comply with Court of Appeals Rule 6(a) and (b), which provide in pertinent part as follows:

(a) Written argument in regard to each issue on appeal shall contain:

. . . .

2. A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

3. A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

. . . .

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument thereon contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument upon such assertion con-

tains a reference to the page or pages of the record where evidence of such fact is recorded.

Furthermore, this Court is under no duty to blindly search the record in order to find proof to substantiate the factual allegations of the parties or any other evidence to support a party's contentions. *Schoen v. J.C. Bradford & Co.,* 642 S.W.2d 420, 427 (Tenn.App.1982); *Redbud Cooperative Corp. v. Clayton,* 700 S.W.2d 551, 557 (Tenn.App.1985). Under the circumstances we will not give any consideration to this issue.

### III. CHANGE OF CUSTODY

In his brief Father addresses this issue as one of those presented for review as follows:

> 3. Whether or not the Court erred in denying the petition for change of custody of the noncustodial father.

This is the first and last assertion by Father in his brief concerning this action by the chancellor. Nowhere in his Argument does Father address the chancellor's action in dismissing his petition to change custody. Accordingly, we hold that pursuant to Court of Appeals Rule 6, this issue was waived by Father on appeal.

The decree of the chancellor is affirmed in all respects. Costs on appeal are taxed to Father, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.